**MALUIA, FAGAIMA, FAGAIMA FAMILY by Aifai, LAVATAI, LEAPAGA M. and PUAILOA FAMILY by Mapuilefala, all of Nuuuli, Plaintiffs**

**v.**

**ISUMU of Nuuuli, Defendant**

No. 12-1950

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Leatuvai" in Tafuna]

August 7, 1950

A. A. MORROW, *Chief Justice;* TIUMALU, *District Judge;* and MALEPEAI, *District Judge.*

DECISION

Heard at Fagatogo July 21–22, 1950.

Lagafuaina for Maluia; Leamua for Fagaima, Solosolo for Lavatai; Sialega for Leapaga; Mapuilefala for Puailoa Family; Save for Isumu.

MORROW, *Chief Justice.*

Isumu of Nuuuli filed his application with the Registrar of Titles to have certain land located at Tafuga registered as his individually owned property. Objections to the proposed registration were filed by Maluia, Fagaima, the Fagaima family by Aifai, Lavatai, Leapaga M., and the Puailoa family by Mapuilefala. The various objectors claimed title to the land as the communal property of their respective families. Hence this litigation. See Sec. 950 of the A. S. Code. The application was accompanied by a survey of the land on which it was designated Leatuvai. Prior to the hearing the court viewed the property involved in the presence of the parties with the exception of Leapaga M. and Fagaima who were nevertheless represented by members of their respective families. With the approval of the court the Fagaima family by Aifai withdrew their objection at the beginning of the hearing.

The surveyed tract was originally bush as was the case with most land in American Samoa. At the present time it contains a number of clearings mostly around its perimeter. There is a pig fence in the inner part of the tract and another pig fence on its north side. Title to bush land as we have held heretofore is acquired by occupation thereof under a claim of ownership. In the case of *Soliai v. Lagafua,* No. 5-1949 (Am. Samoa) we said: "Occupation coupled

558

with a claim of ownership will establish ownership to what was bush land before occupation. See II Blackstone 8. The view that the occupant who first takes possession of land with the intention of having it as his own thereby becomes the owner of it is approved in Maine's Ancient Law (3rd Am. ed.) at page 238. This doctrine of acquisition of original title by the first occupant, accompanied by a claim of ownership, was approved by this court in the case of *Faataliga v. Fano*, No. 80-1948 (Am. Samoa)." In *Soliai v. Levu*, No. 6-1949 (Am. Samoa) we said: "This court judicially knows that when the members of a Samoan family took possession of bush land and used it in early days, ownership was claimed not by such members in their own right but in behalf of their matai as owner of the communal family property." We said in *Leasiolagi v. Fao*, No. 12-1949 (Am. Samoa): "And it was the custom for the matai and members of his family clearing bush land and occupying it to claim it as communal family land and not as the individually owned land of either the matai or the family members occupying it." While not all of the surveyed land has been cleared nevertheless since there are so many clearings and plantations in its perimeter and since it contains pig walls within it, we think there has been sufficient occupation to convert it from a state of unclaimed land, res nullius, to land which is now the subject of ownership.

The evidence clearly establishes the fact that at various times persons from different families have had plantations on the land and that the families of which they were members have claimed the land as owners.

Puailoa claimed that his family had had some plantations on the land. This was disputed by a number of witnesses. Whether or not the Puailoa family ever had plantations on the property is purely a question of fact. "It is elementary that in civil cases the mere preponderance of the proof is all that is necessary to establish the point in

issue. . . ." I Jones, Evidence (4th ed.) 6. We think the evidence as a whole clearly preponderates against the view that the Puailoa people have ever had any plantations on the disputed tract. Isumu testified that "There are no plantations of Puailoa on this land; the only plantations that are on the land are mine." Lavatai when asked whether the Puailoa people had any plantations on the land answered "No plantations." He did say, however, that the Puailoa people had some land adjacent to the surveyed tract. Masani testified "I am well familiar with this land; Puailoa land is not in the surveyed tract." Puailoa was fined in the village court at Nuuuli for pulling up plants in one of Isumu's plantations on the land in dispute. It may be that the Puailoa people do have some land in the neighborhood of the surveyed tract but however that may be (and we make no decision whatsoever on that point) we are convinced and we hold from a preponderance of the evidence that the Puailoa family has no land within the confines of the surveyed tract.

In a statement of his right to the land in dispute filed prior to the hearing, claimant Isumu said "My father Leapaga Tapili gave me the authority to cultivate and plant the land. My father informed me that the land was given to him by his father Faitala. It is more than 20 years since I planted the first plantation in this land. That is my right to the land now in dispute." Isumu testified as follows:

"Q. You filed a statement with the court to the effect that your father Leapaga Tapili gave you the authority to plant and cultivate the land in dispute, is that correct?

A. No.

Q. You mean you did not tell the truth when you made your statement to the court?

A. I want the first question before that.

Q. Your statement handed in to the court to show your right to the land in dispute in the first line says this "My father Leapaga Tapili gave me the authority to cultivate and plant the land."

A. Yes it is Leapaga Tapili.

Q. He gave you authority to go on that land?

A. He authorized me to enter upon the land, cultivate the land and plant plantations.

Q. Did he own it?

A. Tapili also told me to go on the land and plant plantations.

Q. In the second line you said: "My father informed me that the land was given to him by his father Faitala."

A. That is what my father told me.

Q. So Failtala [sic] gave the land to Leapaga Tpili [sic] and Leapaga Tapili gave you authority to cultivate it?

A. The bush.

Q. When did he give you that authority?

A. 1929.

Q. That is when you came from Upolu?

A. Yes."

Tapili himself who was the Leapaga testified that he gave permission to his true son Isumu to go on the land and cultivate it and that said permission was given "after the war when the Marines moved away." He further testified that "Before I gave permission to my son I put up one banana plantation on one side and one banana plantation on the other." To the query "Did Isumu have any plantations in there (on the land) before the war?" Tapili, the father, answered "No." Masani also testified that Isumu had no plantations on the land before the war. Isumu did not notify the Pulenuu of the intended survey of the land before it was made. Isumu was born in Upolu. We are convinced from the testimony of Isumu himself and his father Tapili that the surveyed land is family land and not Isumu's individual property. While Isumu entered upon the land and put in some plantations in the clearing, he did it under the authority of the Leapaga his father. We think from the evidence and the circumstances that Isumu conceived the idea of claiming the land as his own sometime after he had put in his plantations under the authority of Tapili Leapaga. The evidence clearly preponderates in

561

favor of the view that this land is not the individual land of Isumu and we so hold.

Fagaima claimed that all of the surveyed tract was Fagaima land; that the Fagaima people had had some plantations on the land and claimed it, thereby making it the property of the Fagaima family in accordance with Samoan customs and the law as we have stated it from Blackstone and Maine. But we are convinced from the evidence, and it clearly preponderates in favor of our view, that the Maluia people also had plantations on the land before the war; that the Leapaga people likewise did as did the Lavatai people. We think that Isumu's entry and whatever clearing he did was for his family under the Leapaga title. A number of witnesses testified to the existence of the Paepaeuli family in Nuuuli, that it has six matais, to wit: Leapaga, Lavatai, Maluia, Fagaima, Taumua and Tonu. We do not believe from the evidence that the plantations on the land prior to the war were put in solely by the Fagaima people. We hold that the evidence, in spite of the conflict therein, preponderates in favor of the view that the Paepaeuli people (and the evidence shows that Fagaima is one of the Paepaeuli family matais) occupied and used this land before the war and claimed it as theirs. Also we are convinced that Isumu, a member of the Paepaeuli family through the Leapaga, put in plantations on the land after the war under the authority of Leapaga Tapili. Part of the land was cleared by the Marines during the war. Isumu clearly has plantations on that part of the land adjacent to the highway marked "Ordnance Road" on the survey.

This court must decide this case according to the evidence and the law. The court does not make the law nor does it produce the evidence. The evidence comes from the witnesses; the law from the legislative branch of the Government. Applying the law to the evidence we hold that the

surveyed tract is the communal land of the Paepaeuli family having the above named six matais.

Accordingly it is ORDERED, ADJUDGED and DECREED that the surveyed tract, designated Leatuvai on the survey, shall be registered as the communal land of the Paepaeuli family, which family has the following matais, to wit: Leapaga, Maluia, Lavatai, Fagaima, Taumua and Tonu. The Registrar of Titles will be so advised.

While we hold that Isumu does not own the surveyed land, nevertheless since he entered thereon under the authority of the Leapaga, he is entitled, under Samoan customs, to keep any plantations which he has put in on the part of the land cleared by him, also he is entitled to keep plantations first put in by him on the part of the land cleared by the Marines and/or war contractors. See Sec. 8, A. S. Code. This decree is not a license to drive Isumu from the land.

Inasmuch as Isumu paid for the survey and the benefit of it will inure to the Paepaeuli family it is ORDERED that $40.00 of the costs totaling $50.00 shall be paid by Leapaga, Lavatai, Maluia and Fagaima, each of the four paying $10.00. The remaining $10.00 of the costs shall be paid by Puailoa. All costs to be paid within 30 days.